ACCEPTED
04-17-00251-CV
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
9/27/2017 2:37 PM



Melissa A. Lorber
(512) 495-xxxx
mlorber@enochkever.com

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS
09/27/2017 2:37:51 PM
KEITH E. HOTTLE
CLERK

September 27, 2017

Keith E. Hottle, Clerk of the Court
Fourth Court of Appeals
Cadena-Reeves Justice Center
300 Dolorosa, Suite 3200
San Antonio, Texas 78205-3037

> Re:   *No. 04-17-00251-CV, Juan Alvarez v. State Farm Lloyds, In the Court of Appeals, Fourth District of Texas – San Antonio*

Dear Mr. Hottle:

State Farm writes to inform the Court about two new Texas court decisions, issued since State Farm filed its appellee's brief, that address the same issues as this case. Please forward this letter to the justices on the panel for this case.

Both of these new opinions support State Farm's position in this case:

- On September 21, 2017, the United States Court of Appeals for the Fifth Circuit issued an opinion in *Mainali Corp. v. Covington Specialty Insurance Co.* (attached as Appendix A). The Fifth Circuit affirmed a take-nothing summary judgment on the insurer's breach of contract and Insurance Code, Chapter 542 claims that had been granted after the insurer paid an appraisal award. *Id.* at 3-6.

- On September 22, 2017, the Texas Supreme Court denied the insurer's petition for review in *Richardson East Baptist Church v. Philadelphia Indemnity Insurance Co.*, No. 16-0347. The petition had challenged the Dallas court of appeals' decision affirming a take-nothing judgment on breach of contract and Insurance Code, Chapter 541 claims after the insurer's payment of an appraisal award. *See* No. 05–14–01491–CV, 2016 WL 1242480, *6-11 (Tex. App.—Dallas Mar. 30, 2016, pet. denied) (attached as Appendix B).

Sincerely,

/s/ *Melissa A. Lorber*
Melissa A. Lorber

ENOCH KEVER PLLC

Bridgepoint Plaza
5918 W. Courtyard Drive, Suite 500
Austin, Texas 78730

p:  512.615.1200
f:   512.615-1198

enochkever.com

**CERTIFICATE OF SERVICE**

I hereby certify that, on September 27, 2017, a true and correct copy of the above and foregoing has been served via electronic service on the following:

Joshua P. Davis
  josh@thejdfirm.com
Katherine Ray
  Katie@thejdfirm.com
Davis Law Group
1010 Lamar, Suite 200
Houston,  Texas  77002

/s/ *Melissa A. Lorber*
Melissa A. Lorber

# APPENDIX A

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-10350
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**
September 21, 2017

Lyle W. Cayce
Clerk

MAINALI CORPORATION,

      Plaintiff - Appellant

v.

COVINGTON SPECIALTY INSURANCE COMPANY; ENGLE MARTIN;
ASSOCIATES, INCORPORATED; LYNN SUMMERS,

      Defendants - Appellees

Appeal from the United States District Court
for the Northern District of Texas

Before DAVIS, CLEMENT, and COSTA, Circuit Judges.

GREGG COSTA, Circuit Judge:

A fire damaged a gas station and convenience store owned by Mainali Corporation. Mainali filed a claim with its property insurer, Covington Specialty Insurance Company, which paid the claims based on an independent adjuster's estimates. Mainali thought it was owed more, so it sued Covington for breach of contract, breach of the duty of good faith and fair dealing, fraud, and violations of the Texas Insurance Code and Texas Deceptive Trade Practices Act. After a full appraisal process, a panel's appraisal award was less than Covington had already paid to Mainali under the insurance policy. But Covington did pay a relatively small additional sum to ensure its payments

No. 17-10350

were consistent with the way the appraisal panel allocated the losses. The district court granted summary judgment for Covington on all of Mainali's claims. The key issue we decide involves the application of the Prompt Payment of Claims Act to payments of an award pursuant to an appraisal process. For the reasons that follow, we AFFIRM.

## I.

Mainali owned a gas station and convenience store (the Property) in Decatur, Texas. Covington insured Mainali's Property. The commercial package insurance policy included coverage for the building, associated business personal property, the gas and fuel pumps, the gas station's canopy and awnings, and lost business income. It also provided for payment of loss on an actual cash value basis—that is, with deduction for depreciation—and required payment of the depreciation holdback or full replacement cost value only if the insured repaired or replaced the property.

In April 2014, a fire damaged Mainali's Property. The following day, Mainali notified Covington of the fire. Three days after the fire, Covington sent Lynn Summers, an independent adjuster, to investigate Mainali's claim. Over the course of several payments made from May 2014 through January 2015, Covington paid Mainali $389,255.59 using an actual cash value basis.

Mainali disputed this calculation. And in March 2015, about two months after Covington's last payment, Mainali filed suit against Covington and Summers in state court. Covington removed the lawsuit to federal court and then exercised its right of appraisal under the policy. As a result, Covington and Mainali each designated an appraiser, and the two appraisers agreed on an umpire. The appraisal panel issued an appraisal award of $387,925.49 as actual cash value and a replacement cost value of $449,349.61. The latter was the relevant figure as Mainali did not repair or replace the Property. The appraisal award provided that it was "inclusive of all FIRE damages sustained

to the insured property" and was the sum of three types of losses: Building, Contents, and Business Interruption.  Although Covington had already paid more than the total amount the appraisal panel said it owed, it paid an additional $15,175.82 for the building allocation after the panel announced its award.

Covington and Summers subsequently moved for summary judgment on Mainali's claims.  They argued that under Texas law, the timely payment of the appraisal award precluded liability on Mainali's breach of contract and extracontractual claims.  Mainali responded that the appraisal award was incomplete because it did not expressly include any amounts for fuel and gas pumps, the gas station's canopy and awnings, or code upgrades.  As for its extracontractual claims, Mainali pressed only its claim under the Prompt Payment of Claims Act in Chapter 542 of the Texas Insurance Code.  It argued the postappraisal payment was subject to that Act's interest penalties for payments made more than 60 days after the insurer receives necessary documentation from the insured.  The district court granted Covington's motion.

## II.

Mainali first challenges the district court's grant of summary judgment on the breach of contract claim.  Under Texas law, "appraisal awards made pursuant to the provisions of an insurance contract are binding and enforceable, and every reasonable presumption will be indulged to sustain an appraisal award." *Franco v. Slavonic Mut. Fire Ins. Ass'n-CIC*, 154 S.W.3d 777, 786 (Tex. App.—Houston [14th Dist.] 2004, no pet.).  "The effect of an appraisal provision is to estop one party from contesting the issue of damages in a suit on the insurance contract, leaving only the question of liability for the court." *TMM Invs., Ltd. v. Ohio Cas. Ins. Co.*, 730 F.3d 466, 472 (5th Cir. 2013) (quoting *Lundstrom v. United Servs. Auto. Ass'n*, 192 S.W.3d 78, 87 (Tex.

No. 17-10350

App.—Houston [14th Dist.] 2006, pet. denied)).  Courts have thus repeatedly rejected breach of contract claims when an insurer timely paid an appraisal award.  *See, e.g., Quibodeaux v. Nautilus Ins. Co.*, 655 Fed. App'x 984, 986–87 (5th Cir. July 7, 2016); *Blum's Furniture Co. v. Certain Underwriters at Lloyds London*, 459 Fed. App'x 366, 368–69 (5th Cir. Jan. 24, 2012); *Nat'l Sec. Fire & Cas. Co. v. Hurst*, 2017 WL 2258243, at *3–4 (Tex. App.—Houston [14th Dist.] May 23, 2017, no pet. h.); *Garcia v. State Farm Lloyds*, 514 S.W.3d 257, 273–74 (Tex. App.—San Antonio 2016, pet. denied).  Indeed, Texas law recognizes only three situations that allow a court to set aside an appraisal award: "(1) when the award was made without authority; (2) when the award was made as a result of fraud, accident, or mistake; or (3) when the award was not in compliance with the requirements of the policy." *Franco*, 154 S.W.3d at 786.

Apparently relying on the third exception to breathe life into his breach of contract claim, Mainali contends that the appraisal award was incomplete because it "excludes" damage to items covered by the policy: fuel and gas pumps, the gas station's canopy and awnings, and code upgrade costs.  But Mainali cites nothing in the record showing these items were not included.  It is Mainali's burden to identify such evidence in order to overcome summary judgment given that the appraisal award states that it "is inclusive of all FIRE damages sustained to the insured property" (and shows code upgrade costs were included in the building loss calculation).  Its failure to do so means there is no disputed issue of material fact, and the appraisal award will not be set aside.

## III.

We next address Mainali's prompt payment claim under Chapter 542 of the Texas Insurance Code.  TEX. INS. CODE §§ 542.051 *et seq.*  Section 542.058 of the statute requires the insurer to pay the policyholder's claim within 60

No. 17-10350

days of receiving all documentation needed to resolve the claim.  If the insurer does not do so, it is liable for an 18% penalty on the amount that was not timely paid, plus attorney's fees.  *Id.* § 542.060.

We must decide whether a payment made to comply with an appraisal award, which in most if not all cases is going to be paid after the 60-day window, is subject to this penalty.  No reported Texas case has ever subjected such a payment to the statute.  Earlier this year, a state court of appeals held that "full and timely payment of an appraisal award under the policy precludes an award of penalties under the Insurance Code's prompt payment provisions." *Hurst*, 2017 WL 2258243 at *5 (citing *In re Slavonic Mut. Fire Ins. Ass'n*, 308 S.W.3d 556, 563 (Tex. App.—Houston [14th Dist.] 2010, no pet.), *overruled on other grounds by In re Universal Underwriters of Tex. Ins. Co.*, 345 S.W.3d 404 (Tex. 2011)); *see also Garcia*, 514 S.W.3d at 274–75; *Breshears v. State Farm Lloyds*, 155 S.W.3d 340, 344–45 (Tex. App.—Corpus Christi 2004, pet. denied). We recently held the same.  *Quibodeaux*, 655 Fed. App'x at 988 (5th Cir. 2016) (holding that a "plaintiff may not seek Chapter 542 damages for any delay in payment between an initial payment and the insurer's timely payment of an appraisal award"); *see also Blum's Furniture Co.*, 459 Fed. App'x at 368–69; *McEntyre v. State Farm Lloyds, Inc.*, 2016 WL 6071598, at *6 (E.D. Tex. Oct. 17, 2016).

Mainali does find support for its view in one district court decision.  *See Graber v. State Farm Lloyds*, 2015 WL 3755030 (N.D. Tex. June 15, 2015).  The most fundamental problem with *Graber* is that it did not recognize an *Erie* court's duty to follow state courts' interpretation of state law rather than the interpretation the federal court thinks makes the most sense.  *Rideau v. Keller Indep. Sch. Dist.*, 819 F.3d 155, 165 (5th Cir. 2016) (explaining that on a state law question "we must defer to the prevailing view of the state intermediate courts, even more so if that view is uniform, unless convinced by other

5

persuasive data that the highest court of the state would decide otherwise . . . ." (quotation and citation omitted)). Further, the primary authority *Graber* relied on was the rejection of a "good faith" defense to the Prompt Payment of Claims Act in a nonappraisal case. *Graber*, 2015 WL 3755030 at \*10 (citing *Higginbotham v. State Farm Mut. Auto Ins. Co.*, 103 F.3d 456, 461 (5th Cir. 1997)). *Higginbotham* considered an insurer's outright rejection, based on a reasonable defense, of a claim rather than an alleged underpayment followed by a timely postappraisal payment. *See* 103 F.3d at 458, 461. The different situation in which that ruling arose is not enough to divine that the Supreme Court of Texas would disagree with all the lower courts in the state that have addressed the issue in the context of postappraisal payments. Covington was not trying to avoid payment of the claim; it was invoking a contractually agreed to mechanism for assessing the amount it owed.

We must defer to the view of the Texas courts that have confronted the same question this case poses. *Breshears*, 155 S.W.3d at 345 ("The Breshears also argue that by invoking the appraisal process, State Farm did not notify them as to whether it intended to pay their claim within the time required by the code. We disagree."). At a minimum under those state court decisions, there is no statutory violation because Covington made a preappraisal award that was undeniably reasonable. *Id.* (rejecting prompt payment claim because the insurer "complied with the insurance code, and provided a reasonable payment within a reasonable time"). In fact, it was more than the panel found due ($389,255, above the awarded $387,925). Only because of an allocation issue relating to the building award did Covington—out of an abundance of caution—issue an additional $15,175.82 to Mainali after the appraisal. Covington did not violate the Prompt Payment of Claims Act.

**\* \* \***

The judgement of the district court is AFFIRMED.

*FIFTH CIRCUIT RULE 39*

**39.1 Taxable Rates.** *The cost of reproducing necessary copies of the brief, appendices, or record excerpts shall be taxed at a rate not higher than $0.15 per page, including cover, index, and internal pages, for any for of reproduction costs. The cost of the binding required by 5ᵀᴴ Cɪʀ. R. 32.2.3that mandates that briefs must lie reasonably flat when open shall be a taxable cost but not limited to the foregoing rate. This rate is intended to approximate the current cost of the most economical acceptable method of reproduction generally available; and the clerk shall, at reasonable intervals, examine and review it to reflect current rates. Taxable costs will be authorized for up to 15 copies for a brief and 10 copies of an appendix or record excerpts, unless the clerk gives advance approval for additional copies.*

**39.2 Nonrecovery of Mailing and Commercial Delivery Service Costs.** *Mailing and commercial delivery fees incurred in transmitting briefs are not recoverable as taxable costs.*

**39.3 Time for Filing Bills of Costs.** *The clerk must receive bills of costs and any objections within the times set forth in Fᴇᴅ. R. Aᴘᴘ. P. 39(ᴅ). See 5ᵀᴴ Cɪʀ. R. 26.1.*

Fᴇᴅ. R. Aᴘᴘ. P. 39.        COSTS

**(a)** *Against Whom Assessed.* The following rules apply unless the law provides or the court orders otherwise;

(1) if an appeal is dismissed, costs are taxed against the appellant, unless the parties agree otherwise;

(2) if a judgment is affirmed, costs are taxed against the appellant;

(3) if a judgment is reversed, costs are taxed against the appellee;

(4) if a judgment is affirmed in part, reversed in part, modified, or vacated, costs are taxed only as the court orders.

**(b)** *Costs For and Against the United States.* Costs for or against the United States, its agency or officer will be assessed under Rule 39(a) only if authorized by law.

**©)** *Costs of Copies* Each court of appeals must, by local rule, fix the maximum rate for taxing the cost of producing necessary copies of a brief or appendix, or copies of records authorized by rule 30(f). The rate must not exceed that generally charged for such work in the area where the clerk's office is located and should encourage economical methods of copying.

**(d)** *Bill of costs: Objections; Insertion in Mandate.*

(1) A party who wants costs taxed must – within 14 days after entry of judgment – file with the circuit clerk, with proof of service, an itemized and verified bill of costs.

(2) Objections must be filed within 14 days after service of the bill of costs, unless the court extends the time.

(3) The clerk must prepare and certify an itemized statement of costs for insertion in the mandate, but issuance of the mandate must not be delayed for taxing costs. If the mandate issues before costs are finally determined, the district clerk must – upon the circuit clerk's request – add the statement of costs, or any amendment of it, to the mandate.

**(e)** *Costs of Appeal Taxable in the District Court.* The following costs on appeal are taxable in the district court for the benefit of the party entitled to costs under this rule:

(1) the preparation and transmission of the record;

(2) the reporter's transcript, if needed to determine the appeal;

(3) premiums paid for a supersedeas bond or other bond to preserve rights pending appeal; and

(4) the fee for filing the notice of appeal.

# APPENDIX B

2016 WL 1242480
Only the Westlaw citation is currently available.

SEE TX R RAP RULE 47.2 FOR DESIGNATION AND SIGNING OF OPINIONS.

Court of Appeals of Texas,
Dallas.

Richardson East Baptist Church, Appellant
v.
Philadelphia Indemnity Insurance Company and James Greenhaw, Appellees

No. 05–14–01491–CV
|
Opinion Filed March 30, 2016

**Synopsis**
**Background:** Insured property owner brought action against insurer and adjustor for breach of contract, violations of Insurance Code, breach of duty of good faith and fair dealing, and conspiracy. The 298th Judicial District Court, Dallas County, entered take-nothing judgment. Insured appealed.

**Holdings:** The Court of Appeals, Myers, J., held that:

[1] e-mails from claims adjuster to insurer, relaying conversations held with representatives of insured, did not constitute a demand for appraisal of insured's loss from hail damage to building, as asserted by insured in breach of contract claim alleging insurer breached policy's appraisal procedure;

[2] statements of insurer's employee that insurer would not agree to an appraisal until insured provided some expert evidence pointing out the alleged additional hail damage not found by insurer's expert did not impose a condition precedent to insured's right to invoke the appraisal process, as could constitute breach of insurance contract;

[3] liability of insurer was not reasonably clear, and thus insurer's alleged undervaluing of insured's loss was not a violation of provision of Insurance Code prohibiting an insurer from not attempting in good faith to effect a prompt, fair, and equitable settlement of a claim submitted in which liability had become reasonably clear.

Affirmed.

West Headnotes (7)

**[1]** **Insurance** 🔑 Demand

E-mails from claims adjuster to insurer, relaying conversations held with representatives of insured, did not constitute a demand for appraisal of insured's loss from hail damage to building, as asserted by insured in breach of contract claim alleging insurer breached policy's appraisal procedure, where insured's representative merely stated that he was "likely" to invoke appraisal.

Cases that cite this headnote

**[2]** **Insurance** Contracts

Statements of insurer's employee that insurer would not agree to an appraisal, following hail damage to insured's property, until insured provided some expert evidence pointing out the alleged additional hail damage not found by insurer's expert did not impose a condition precedent to insured's right to invoke the appraisal process, as could constitute breach of insurance contract, where there was no evidence that such statements were communicated to insured before insurer invoked appraisal process.

Cases that cite this headnote

**[3]** **Insurance** Subjects and scope of appraisal

**Insurance** Award

Fact that appraisal award was substantially higher than insurer's initial payment on insured's loss from hail damage to building was not evidence that insurer intentionally or purposefully undervalued insured's loss, as asserted by insured in breach of contract action against insurer, where policy's appraisal clause did not state that appraisal would determine whether a breach of contract had occurred.

Cases that cite this headnote

**[4]** **Insurance** Settlement Duties;Bad Faith

An insurer's reliance on the opinion of its experts, absent evidence of knowledge of the unreliability of the expert's opinion, does not violate any duty.

Cases that cite this headnote

**[5]** **Insurance** Duty to settle or pay

**Insurance** Investigations and inspections

There was no evidence that insurer engaged in a practice of delaying full payment of claims, as could support insured's action against insurer for violation of Insurance Code through alleged failure to implement reasonable standards for the prompt investigation of claims. Tex. Ins. Code Ann. § 542.003(b)(3).

2 Cases that cite this headnote

**[6]** **Insurance** Duty to settle or pay

Liability of insurer was not reasonably clear, and thus insurer's alleged undervaluing of insured's loss to building from hail damage was not a violation of provision of Insurance Code prohibiting an insurer from not attempting in good faith to effect a prompt, fair, and equitable settlement of a claim submitted in which liability had become reasonably clear, where different parties provided different opinions regarding extent of covered loss, and there was no evidence that difference of opinion was anything other than bona fide dispute. Tex. Ins. Code Ann. § 542.003(b)(4).

2 Cases that cite this headnote

**[7]** **Insurance** Duty to settle or pay

Insurer had reasonable basis for denying payments to insured above adjustor's estimate of cost of repairs minus amount of deductible, following insured's claim for hail damage to building, and thus insurer did not breach duty of good faith and fair dealing, even though other experts ultimately estimated loss at higher value, where there was no evidence that insurer should have known adjustor's estimations were inaccurate.

Cases that cite this headnote

**On Appeal from the 298th Judicial District Court, Dallas County, Texas, Trial Court Cause No. DC–13–13868–M**

**Attorneys and Law Firms**

Kelli Gunter, Richard Landon Hathaway, William Robert Pilat, for Philadelphia Indemnity Insurance Company.

Kirk L. Pittard, Shannon Elizabeth Loyd, Frederick Leighton Durham, Leigh Prichard Bradford, Thad D. Spalding, for Richardson East Baptist Church.

Bruce Wilkin, Jay W. Brown, Andrew Edelman, for James Greenhaw.

Before Justices Francis, Lang–Miers, and Myers

## MEMORANDUM OPINION

Opinion by Justice Myers

**\*1**  Richardson East Baptist Church appeals the trial court's judgment that the Church take nothing on its claims against Philadelphia Indemnity Insurance Company and James Greenhaw. The Church brings six issues on appeal contending the trial court erred by granting appellees' motions for summary judgment on the Church's claims for breach of contract, violations of the Texas Insurance Code, breach of the duty of good faith and fair dealing, and conspiracy. We affirm the trial court's judgment.

## BACKGROUND

The Church owns property with multiple buildings, which are insured by Philadelphia Indemnity. On April 23, 2013, the Church notified Philadelphia Indemnity that the roofs on two of the buildings were damaged during a hailstorm. The Church submitted an estimate of $32,713.13 from Bradley Roofing for replacing the roofs on "Admin and Chapel." Philadelphia Indemnity assigned an independent adjusting company, Property Claims Services, Inc., to investigate the claim. The adjusting company assigned James Greenhaw to be the adjustor for the claim. Greenhaw inspected the property on April 25, 2013 and reported his findings to Philadelphia Indemnity the following week. Greenhaw determined the hail damage required replacement of the west slope of the sanctuary's roof, spot repairs of the east slope of the sanctuary, and spot repairs on the roof of a second building. Greenhaw estimated the repairs would cost $10,441.55, and after deduction of the $2,500 deductible, determined the Church was entitled to payment of $7,941.55 under the policy.

The Church's pastor, Wayne Lewis, disagreed with Greenhaw's findings and estimate. Lewis told Greenhaw the Church had an expert examine the roofs who had found more extensive damage than Greenhaw had found. On May 30, 2013, Philadelphia Indemnity instructed Greenhaw to hire an engineer for an evaluation, and Greenhaw hired Donan Engineering Co. The engineer issued his report on June 18, 2013, stating the only hail damage was to the west slope of

the sanctuary, which required removal and replacement of that part of the roof. Although Donan Engineering found less damage than Greenhaw had found, Philadelphia Indemnity continued to offer to pay the Church based on Greenhaw's estimate. On June 21, 2013, Greenhaw reported to Philadelphia Indemnity that Lewis disagreed with both Greenhaw's and Donan Engineering's determinations. Greenhaw also stated in his report that Lewis "said he would option for the appraisal provision in the policy" but that Lewis "was still in the process of deciding who" the Church's appraiser would be.

On June 24, 2013, Philadelphia Indemnity issued a check to the Church for $7,941.55.

On July 1, 2013, the Church hired a public adjuster, Scott Friedson. Friedson estimated the cost to repair the hail damage was $36,372.58, and that after deducting the $2,500 deductible, Philadelphia Indemnity owed the Church $33,872.58. On Friday, July 19, 2013, Friedson e-mailed Greenhaw stating he disagreed with Greenhaw's initial estimate and proposed they settle the case the following Monday. Friedson also stated, "If we cannot reach an agreement then the insured is likely to invoke appraisal and name Loy Vickers."

**\*2** On July 23, 2013, the Church hired a law firm to represent it in its dispute with Philadelphia Indemnity. The Church also retained an expert litigation adjuster, Art Boutin, to inspect the buildings and determine the amount of the loss. On August 2, 2013, Boutin estimated the damage to the Church from hail was $112,077.32. [1]

In his report to Philadelphia Indemnity dated August 12, 2013, Greenhaw stated he met with Friedson in late July but that they could not reach an agreement regarding the claim. Greenhaw stated three weeks had passed since he last spoke to Friedson, and Greenhaw considered the claim resolved based on the payment already made to the Church. Greenhaw stated he had offered to meet with Friedson "or if he wants to request the appraisal process, he should do so."

The Church filed suit against Philadelphia Indemnity and Greenhaw on November 21, 2013. On November 25, 2013, before the Church served Philadelphia Indemnity with the suit, Philadelphia Indemnity sent a written request for appraisal pursuant to the policy's provisions. On April 21, 2014, the appraisers issued their written determination that the repair cost for the damage was $30,175 and the actual cash value of the damage was $18,375. Four days later, on April 25, 2014, Philadelphia Indemnity issued a check to the Church for $7,933.45, which was the amount of the appraiser's award less the deductible and the amount Philadelphia Indemnity had previously paid.

In its suit, the Church alleged Philadelphia Indemnity breached the policy, engaged in unfair settlement practices prohibited by the Texas Insurance Code, and breached the duty of good faith and fair dealing. The Church also alleged Greenhaw did not comply with the Texas Insurance Code and that both appellees engaged in a civil conspiracy to underpay the Church's claim. Philadelphia Indemnity and Greenhaw filed motions for summary judgment asserting both traditional and no-evidence grounds. The trial court granted the motions for summary judgment and ordered the Church take nothing on its claims.

## STANDARD OF REVIEW

The standard for reviewing a traditional summary judgment is well established. *See Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 548–49 (Tex.1985); *McAfee, Inc. v. Agilysys, Inc.,* 316 S.W.3d 820, 825 (Tex.App.–Dallas 2010, no pet.). The movant has the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c). In deciding whether a disputed material fact issue exists precluding summary judgment, evidence favorable to the nonmovant will be taken as true. *Nixon,* 690 S.W.2d at 549; *In re Estate of Berry,* 280 S.W.3d 478, 480 (Tex.App.–Dallas 2009, no pet.). Every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor. *City of Keller v. Wilson,* 168 S.W.3d 802, 824 (Tex.2005). We review a summary

judgment de novo to determine whether a party's right to prevail is established as a matter of law. *Dickey v. Club Corp.,* 12 S.W.3d 172, 175 (Tex.App.–Dallas 2000, pet. denied).

**\*3** We review a no-evidence summary judgment under the same legal sufficiency standard used to review a directed verdict. *See* TEX. R. CIV. P. 166a(i); *Flood v. Katz,* 294 S.W.3d 756, 762 (Tex.App.–Dallas 2009, pet. denied). Thus, we must determine whether the nonmovant produced more than a scintilla of probative evidence to raise a fact issue on the material questions presented. *See Flood,* 294 at 762. When analyzing a no-evidence summary judgment, we consider all the evidence in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the movant. *Sudan v. Sudan,* 199 S.W.3d 291, 292 (Tex.2006). A no-evidence summary judgment is improperly granted if the respondent brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact. *King Ranch, Inc. v. Chapman,* 118 S.W.3d 742, 751 (Tex.2003). "More than a scintilla of evidence exists when the evidence rises to a level that would enable reasonable, fair-minded persons to differ in their conclusions." *Id.* (quoting *Merrell Dow Pharms., Inc. v. Havner,* 953 S.W.2d 706, 711 (Tex.1997)). "Less than a scintilla of evidence exists when the evidence is 'so weak as to do no more than create a mere surmise or suspicion' of a fact." *Id.* (quoting *Kindred v. Con/ Chem, Inc.,* 650 S.W.2d 61, 63 (Tex.1983)).

## BREACH OF CONTRACT

In its first and third issues, the Church contends the trial court erred by granting Philadelphia Indemnity's motion for summary judgment on the Church's cause of action for breach of contract. In the first issue, the Church contends that its acceptance of the appraisal award did not bar its claim for breach of contract. In the third issue, the Church asserts it presented some evidence Philadelphia Indemnity breached the contract and that the Church suffered damages that were not addressed by the appraisal award. We conclude under the third issue that the Church presented no evidence Philadelphia Indemnity breached the contract. Accordingly, we do not address the Church's first issue.

The Church asserts Philadelphia Indemnity breached the contract by (a) refusing the Church's request for appraisal and misrepresenting the conditions precedent to the permissible invocation of appraisal, thereby unnecessarily delaying the resulting appraisal award; and (b) intentionally underestimating and undervaluing the Church's loss. Philadelphia Indemnity's grounds for summary judgment included the assertion that the Church had no evidence that Philadelphia Indemnity breached the contract.

### Demand for Appraisal

The policy provided for an appraisal procedure for determining the amount of a loss as follows:

**Appraisal**

If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser and notify the other of the appraiser selected within 20 days of such demand. The two appraisers will select an umpire. If they cannot agree within 15 days upon such umpire, either may request that selection be made by a judge of a court having jurisdiction. Each appraiser will state the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding as to the amount of loss. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal:

**a.** You will still retain your right to bring a legal action against us, subject to the provisions of the Legal Action Against Us Commercial Property Condition; and

**b.** We will still retain our right to deny the claim.

After the Church filed suit, but before Philadelphia Indemnity was served with the suit, Philadelphia Indemnity made a written demand for appraisal. The Church asserts it had demanded appraisal before it filed suit and that Philadelphia Indemnity had refused to participate in the appraisal process at that time.

**\*4** **[1]** To invoke the appraisal process, the Church had to "make written demand for an appraisal of the loss." Philadelphia Indemnity asserts the Church made no "written demand for an appraisal." The Church argues it made two written demands, namely, Greenhaw's e-mail to Gary Grabauskas, a Senior Claims Examiner for Philadelphia Indemnity, stating that Lewis, the Church's pastor, "said he would option for the appraisal provision in the policy," and the e-mail from Friedson, the Church's public adjuster, to Greenhaw stating, "If we cannot reach an agreement then the insured is likely to invoke appraisal and name Loy Vickers." Even if e-mails from an adjuster to the insurer relaying conversations held with representatives of the insured could be considered a "written demand" by the insured, the statements in the e-mails, that Lewis "would option for the appraisal provision" and that he was "likely to invoke appraisal," do not constitute a "demand" for appraisal of the loss. The statement that Lewis "would option for the appraisal provision" was evidence of Lewis's intent, plan, or desire to invoke the appraisal process or a probability that he will do so, but it does not constitute a present demand for the appraisal process. *See Would* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1981). Similarly, the statement that Lewis was "likely to invoke appraisal" indicated a likelihood that Lewis would invoke the appraisal process at some point in the future. However, neither statement put Philadelphia Indemnity on notice that the Church was making a present demand that the appraisal process set forth in the policy be followed for determining the amount of the loss. We conclude the Church has not presented any evidence showing it made a demand for appraisal under the policy.

The Church asserts Philadelphia Indemnity refused the Church's request for appraisal. Because the Church never made a demand invoking the appraisal process, Philadelphia Indemnity could not have refused to participate in the appraisal process because the process was never invoked until Philadelphia Indemnity invoked it after the Church filed suit.

**[2]** The Church argues Philadelphia Indemnity's refusal to participate in the appraisal process is shown by a series of e-mails between Greenhaw and Grabauskas and in Grabauskas's notes. In these e-mails and notes, Grabauskas said Philadelphia Indemnity would not agree to an appraisal until the Church provided some expert evidence pointing out the additional hail damage not found by Philadelphia Indemnity's expert. The Church argues that the policy did not permit Philadelphia Indemnity to impose these conditions on the Church's right to invoke the appraisal process and that Philadelphia Indemnity's doing so breached the contract. However, no evidence shows Grabauskas's statements were communicated to the Church before Philadelphia Indemnity invoked the appraisal process, and no evidence shows the Church made a demand for appraisal. Therefore, Grabauskas's statements, regardless of whether they were correct or incorrect interpretations of the policy, did not impose a condition precedent to the Church's right to invoke the appraisal process.

We conclude the Church presented no evidence that Philadelphia Indemnity breached the contract by refusing the Church's request for appraisal and by misrepresenting the conditions precedent for invocation of appraisal.

**Undervaluing the Church's Loss**

**[3]** The Church asserts Philadelphia Indemnity breached the contract by intentionally and purposefully undervaluing the Church's loss.

The Church states that Greenhaw's First Report containing the estimate of damages failed to specify which areas of the roof required "spot repairs." However, the Church presented no evidence and cited no authority stating that such specificity was required. The Church states in its brief that the Church notified Philadelphia Indemnity "it disagreed with the thoroughness of the report." In support of this statement, the Church cites to an e-mail from Greenhaw to Gary Grabauskas, a Senior Claims Examiner for Philadelphia Indemnity, stating, "I called the pastor and he believes there is more damage than I saw. He has had an expert put [sic] and is waiting on their report. Do you want to get an expert? Opt for the appraisal process?" Grabauskas replied, "I would just retain an engineer to inspect the loss and review his experts [sic] report before we went [sic] to an appraisal." This e-mail exchange shows the Church disagreed with the conclusions in Greenhaw's report, but it does not show the Church disagreed with the thoroughness of the report.

The Church also argues this e-mail exchange shows Philadelphia Indemnity delayed payment of the claim by retaining an engineer to inspect the property instead of opting for an appraisal as Greenhaw suggested. However, the Church does not explain why Philadelphia Indemnity's hiring an engineer to inspect the buildings shows an intent to undervalue the loss, nor does the Church explain why Philadelphia Indemnity was required under the policy or other contract to invoke the appraisal process before hiring an engineer. The policy's provisions for appraisal did not prohibit the parties from seeking expert opinions before demanding appraisal, nor did the policy impose time constraints on the parties' right to demand appraisal.

**\*5** The Church also argues that Greenhaw's Fourth Report to Philadelphia Indemnity dated July 15, 2013, shows Philadelphia Indemnity breached the policy. In his Fourth Report, Greenhaw revised his estimate of the loss to match the loss found by Donan Engineering and advised Philadelphia Indemnity not to send a check based on his original estimate. However, by this time, Philadelphia Indemnity had already issued its check to the Church for the higher amount based on Greenhaw's original estimate. Greenhaw's Fourth Report is not evidence of a breach of the policy.

The Church argues Philadelphia Indemnity's purposeful undervaluing of the Church's loss is also shown by the fact that the appraisal award was substantially higher than Philadelphia Indemnity's initial payment on the loss. In support of this position, the Church relies on *In re Allstate County Mutual Insurance Co.,* 85 S.W.3d 193 (Tex.2002) (orig. proceeding). In that case, the plaintiffs' cars were totaled, and the insurance companies engaged CCC Information to determine the value of the cars. *Id.* at 194. The plaintiffs sued their insurers alleging the insurers instructed CCC to fraudulently generate low values for the cars. The plaintiffs alleged that the insurers systematically undervalued vehicles. *Id.* at 194–95. After the plaintiffs brought suit, the insurers invoked the appraisal provision in the policies for determining the vehicles' value. *Id.* at 195. The insurers then filed a plea in abatement and a motion to invoke appraisal. *Id.* The trial court denied the motion, finding that the appraisal provision, when considered as an arbitration agreement, was unenforceable. *Id.* The insurers then brought a petition for mandamus relief. The issues before the supreme court were whether the trial court abused its discretion by determining that appraisal was a form of arbitration and whether the insurers had an adequate remedy by appeal. The court stated it had held appraisal clauses enforceable since 1888 and that appraisal clauses are not arbitration. [2] *Id.* The court concluded that the trial court abused its discretion. *Id.* at 196. In discussing whether the insurers had an adequate remedy at law by appeal, the court stated:

> As to the plaintiffs' breach of contract claim, the parties have agreed in the contracts' appraisal clause to the method by which to determine whether a breach has occurred. That is, if the appraisal determines that the vehicle's full value is what the insurance company offered, there would be no breach of contract. Accordingly, at a minimum, denying the appraisal will vitiate the defendants' ability to defend the breach of contract claim. Because the appraisals go to the heart of the plaintiffs' breach of contract claim, we need not decide here the significance of the appraisals to each of the remaining claims.

*Id.*

The Church argues the supreme court stated that the result of the appraisal serves as evidence of breach of contract in an insurance policy case, and if the appraisal value equals the insurer's determination of the loss, then there was no breach of contract. The Church then asserts that if an appraisal equal or less than the insurer's determination shows no breach of contract occurred, then an appraisal that is greater than the insurer's determination of the loss proves a breach of contract occurred. However, the Church misreads the opinion. The Church's reasoning is based on an assumption that the court held that any appraisal clause in a policy proves whether a breach of contract occurred, but that is not what the court stated. Instead, the court stated that in the case before it, the parties had agreed in the appraisal clause that the appraisal would determine whether a breach of contract had occurred. [3] *See id.* The appraisal clause in this case contains no such provision. Instead, the appraisal clause states the appraisers' determination "will be binding as to the amount of loss." Unlike the appraisal clause in *Allstate,* the appraisal clause in this case does not indicate that payment by the insurer made before an appraisal that is less than a later appraisal award proves the insurer breached the contract when the insurer promptly pays the difference between the appraisal and its earlier payments. *See Breshears v. State,* 155 S.W.3d 340, 344 (Tex.App.–Corpus Christi 2004, pet. denied).

**\*6** We overrule the Church's third issue. Because of our disposition of this issue, we need not address the Church's first issue.

### EXTRACONTRACTUAL CLAIMS

In its second, fourth, and fifth issues, the Church contends the trial court erred by granting appellees' motions for summary judgment on the Church's claims under chapters 541 and 542 of the Texas Insurance Code and on the Church's claim for breach of the duty of good faith and fair dealing. The Church's second issue asserts that its acceptance of the appraisal award did not bar its extra-contractual claims. The Church asserts in its fourth and fifth issues that it presented some evidence of the violations of the Insurance Code and of the breach of the duty of good faith and fair dealing. The Church asserted that its damages from these violations included its fees paid to Friedson, Boutin, and its lawyers. [4]

Philadelphia Indemnity's grounds for summary judgment included that the Church had no evidence it committed any violations of the statutory provisions or that it breached the duty of good faith and fair dealing, and no evidence that any violations or breaches resulted in the Church's damages. Greenhaw stated in his motion for summary judgment that he incorporated by reference Philadelphia Indemnity's motion for summary judgment into his motion for summary judgment. [5]

#### Insurance Code Claims

**\*7** In its fourth issue, the Church contends the trial court erred by granting appellees' motions for summary judgment on the Church's claims that appellees violated chapter 541 and 542 of the Texas Insurance Code.

*Chapter 541*

The Church asserted Philadelphia Indemnity violated section 541.051(1)(A) and (B), which provides:

It is an unfair method of competition or an unfair or deceptive act or practice in the business of insurance to:

(1) make, issue, or circulate or cause to be made, issued, or circulated an estimate, illustration, circular, or statement misrepresenting with respect to a policy issued or to be issued:

(A) the terms of the policy;

(B) the benefits or advantages promised by the policy....

TEX. INS. CODE ANN. § 541.051(1)(A), (B) (West 2009). The Church also asserts Philadelphia Indemnity violated section 541.060(a)(1), (3), and (7), which provides:

(a) It is an unfair method of competition or an unfair or deceptive act or practice in the business of insurance to engage in the following unfair settlement practices with respect to a claim by an insured or beneficiary:

(1) misrepresenting to a claimant a material fact or policy provision relating to coverage at issue;

....

(3) failing to promptly provide to a policyholder a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the insurer's denial of a claim or offer of a compromise settlement of a claim;

....

(7) refusing to pay a claim without conducting a reasonable investigation with respect to the claim....

TEX. INS. CODE ANN. § 541.060 (West 2009). Philadelphia Indemnity's grounds for summary judgment included the Church's lack of any evidence of a violation of Chapter 541 and lack of any evidence of damages.

The Church contends Philadelphia Indemnity violated these provisions through Grabauskas's statements imposing conditions on participating in the appraisal process after the Church had invoked the appraisal process. However, as discussed above, the Church did not invoke the appraisal process, and no evidence shows Grabauskas's statements were communicated to the Church before Philadelphia Indemnity demanded appraisal. Therefore, the Church had no evidence that Philadelphia Indemnity made a misrepresentation to it about the appraisal process that interfered with the Church's ability to demand an appraisal.

The Church also asserts Philadelphia Indemnity violated these provisions through Greenhaw's statements that the entire roofs of the buildings did not need replacing due to hail and that spot repairs would be sufficient to repair some of the hail damage. These statements did not constitute a misrepresentation of the terms of the policy or of the benefits or advantages promised by the policy. Accordingly, they do not violate section 541.051(1)(A), (B) or section 541.060(a)(1). Nor were these misrepresentations of a "material fact ... relating to coverage" under section 541.060(a)(1). Philadelphia Indemnity never denied coverage for hail damage. The only dispute was whether certain parts of the roof were damaged by hail. When an insurer relies on the opinions of its experts and there is a conflict of opinions between the experts of the insurer and insured, the insurer is not subject to extra-contractual liability "unless there was also evidence that the information on which the insurance company relied in denying the claim was unreliable or not objectively prepared." *Provident Am. Ins. Co. v. Castaneda,* 988 S.W.2d 189, 194 (Tex.1998). The Church did not present any evidence that Greenhaw's or Donan Engineering's estimates of the hail damage were "unreliable or not objectively prepared."

**\*8** The Church asserted Philadelphia Indemnity violated section 541.060(a)(7), "refusing to pay a claim without conducting a reasonable investigation with respect to the claim," because Greenhaw altered his determination of the damages caused by hail to match Donan Engineering's findings. The fact that Greenhaw changed his estimate to match that of Donan Engineering's lower estimate is not evidence that Philadelphia Indemnity failed to conduct a reasonable investigation. Philadelphia Indemnity sent an adjuster and an engineer to inspect the Church's buildings. The fact that

the engineer and the adjuster reached differing conclusions and that their conclusions varied from the determinations of the Church's engineer and adjuster and the appraisal panel is not evidence that they did not conduct a reasonable investigation. *See id.* ("[E]vidence of coverage, standing alone, would not constitute evidence of bad faith denial.... [E]vidence showing only a bona fide coverage dispute does not demonstrate that there was no reasonable basis for denying a claim ... [or] that liability under the policy had become reasonably clear.").

We conclude the Church failed to present any evidence showing Philadelphia Indemnity violated chapter 541 of the Texas Insurance Code.

The Church asserts Greenhaw violated section 541.060(a)(1) when he "advised Friedson that there was insufficient damage to the entire roofs to require complete replacement of all roofs." The Church asserts that the appraisers found Greenhaw's assessment to be inaccurate. However, a bona fide dispute over the extent of coverage does not rise to the level of a violation of section 541.060(a)(1). *See First Am. Title Ins. Co., v. Patriot Bank,* No. 01–14–00170–CV, 2015 WL 2228549, *6–7 (Tex.App.–Houston [1st Dist.] May 12, 2015, no pet.) (mem.op.) (affirming summary judgment for insurer on insured's statutory and common-law bad-faith claims including section 541.060(a)(1)). The Church presented no evidence that the difference between Greenhaw's determination of the extent of the loss and the determinations of other assessors of the damage was anything other than a bona fide dispute over the extent of the loss.

The Church also asserts Greenhaw violated section 541.060(a)(1) by misrepresenting the amount of the loss in his Fourth Report. In that report Greenhaw stated he was changing his estimation of the amount of the loss to match Donan Engineering's lower determination of the damage caused by hail. Section 541.060(a)(1) prohibits misrepresentations to a claimant. *See* TEX. INS. CODE ANN. § 541.060(a)(1). No evidence in the record shows the Church saw Greenhaw's Fourth Report before it incurred any of its asserted damages of hiring Friedson, Boutin, or its lawyers.

The Church asserts there was evidence Greenhaw violated section 541.060(a)(7), which prohibits "refusing to pay a claim without conducting a reasonable investigation with respect to the claim." *Id.* § 541.060(a)(7). The Church states Greenhaw violated this provision by initially estimating the loss substantially below the amount determined by the appraisers and by changing the amount of his estimate of the loss in his Fourth Report to match the estimate of Donan Engineering's estimate. However, the mere fact that Greenhaw's determination of the amount of the loss varied from others is not evidence that his investigation of the claim was not reasonable. Nor is his reduction of the amount of the estimate to match that determined by Donan Engineering evidence of the lack of a reasonable investigation by Greenhaw.

We conclude the Church failed to present any evidence that Greenhaw violated chapter 541 or that any violations resulted in the Church's damages.

*Chapter 542*

The Church asserts Philadelphia Indemnity violated section 542.003(b)(1)–(5), which provides:

(b) Any of the following acts by an insurer constitutes unfair claim settlement practices:

(1) knowingly misrepresenting to a claimant pertinent facts or policy provisions relating to coverage at issue;

(2) failing to acknowledge with reasonable promptness pertinent communications relating to a claim arising under the insurer's policy;

**\*9** (3) failing to adopt and implement reasonable standards for the prompt investigation of claims arising under the insurer's policies;

(4) not attempting in good faith to effect a prompt, fair, and equitable settlement of a claim submitted in which liability has become reasonably clear;

(5) compelling a policyholder to institute a suit to recover an amount due under a policy by offering substantially less than the amount ultimately recovered in a suit brought by the policyholder....

TEX. INS. CODE ANN. § 542.003(b)(1)–(5) (West 2009).

In this case there was no evidence of a knowing misrepresentation. Philadelphia Indemnity relied on the opinions of its experts, and the Church presented no evidence that such reliance was misplaced or in bad faith. *See Provident,* 988 S.W.2d at 194.

The Church asserts Philadelphia Indemnity violated subsection (b)(2) by not acknowledging with reasonable promptness the Church's requests for appraisal that were communicated to Philadelphia Indemnity by Greenhaw. Even if an e-mail from Greenhaw to Grabauskas could constitute a written demand by the Church, no response was required from Philadelphia Indemnity unless the appraisal communications constituted a demand for appraisal under the policy. As discussed above, the statements communicated by Greenhaw to Philadelphia Indemnity did not constitute a demand for appraisal from the Church.

 **[4]**  **[5]**  The Church asserts some evidence shows Philadelphia Indemnity violated subsection (b)(3) by failing to implement reasonable standards for the prompt investigation of claims, namely, "[1] Philadelphia's and Greenhaw's practice of delaying full payment of claims, [2] undervaluing loss, [3] demanding an engineering report to contest contradictions in loss estimates, [4] reducing an adjuster's award after a lower estimate of loss is received, and [5] refusing to acknowledge and move forward with appraisal once it receives notice of an insured's request to do so...." First, there is no evidence of a "practice of delaying full payment of claims": Philadelphia Indemnity paid the Church the undisputed amount of the claim thirty-one days after the claim was filed and eight days after Donan Engineering reported that the covered loss was no greater than that determined by Greenhaw, and Philadelphia Indemnity paid the disputed portion of the claim four days after the appraisers resolved the dispute. Second, concerning Philadelphia Indemnity's undervaluing of the loss, an insurer's reliance on the opinion of its experts, absent evidence of knowledge of the unreliability of the expert's opinion, does not violate any duty. *Provident,* 988 S.W.2d at 194. Third, the record does not contain any evidence that Grabauskas's statements that Philadelphia Indemnity needed an expert opinion from the Church contradicting Donan Engineering's finding before Philadelphia Indemnity would change its position on the extent of hail damage were communicated to the Church. Furthermore, Philadelphia Indemnity's reliance on its experts does not open it to extra-contractual liability absent evidence that such reliance was improper. Fourth, the Church does not explain, and we do not perceive, how Greenhaw's reduction of his estimate to be in line with the opinion of an independent expert violates any provision of section 542.003(b) absent evidence of the bias or unreliability of the expert. Fifth, as discussed above, the policy required a written demand for appraisal before Philadelphia Indemnity was required to move forward with the appraisal process, and the Church never made a demand for appraisal. Because there was no demand for appraisal from the Church, there was no evidence Philadelphia Indemnity refused to acknowledge a demand for appraisal and refused to move forward with appraisal.

 **\*10**  **[6]**  The Church asserts Philadelphia Indemnity violated subsection (b)(4) by "[1] undervaluing Richardson's loss, [2] revising adjuster reports to lower loss estimates, [3] ignoring requests for appraisal, and [4] delaying appraisal until suit was filed." One element of a claim under subsection (b)(4) is that "liability has become reasonably clear." TEX. INS. CODE ANN. § 542.003(b)(4). First, "evidence showing only a bona fide coverage dispute does not demonstrate that there was no reasonable basis for denying a claim. By the same token, evidence of a coverage dispute is not evidence that liability under the policy had become reasonably clear." *Provident,* 988 S.W.2d at 194. In this case, the Church presented no evidence that the difference of opinion regarding the extent of the covered loss to the Church's buildings was anything other than a bona fide coverage dispute. Second, the Church does not explain how Greenhaw's reduction of his estimate

to match that of Donan Engineering's constituted bad faith. Third, Philadelphia Indemnity did not ignore the Church's demands for appraisal because the Church never made a demand for appraisal. And, fourth, Philadelphia Indemnity did not delay appraisal until after suit was filed because there was no demand for appraisal until Philadelphia Indemnity demanded appraisal after suit was filed.

The Church contends Philadelphia Indemnity violated subsection (b)(5) because it "did not agree to or move forward with appraisal until 4 days after suit was filed—forcing [the Church] to retain counsel and file suit before agreeing to pay a [sic] the full value of the loss as mandated by the appraisal process." As discussed above, Philadelphia Indemnity had no obligation to "move forward with appraisal" until the Church made a demand for appraisal, which it never did. The language of the policy, "either may make written demand for an appraisal of the loss," made the appraisal process discretionary with the parties. The evidence in this case does not show Philadelphia Indemnity had an obligation under the policy to demand appraisal before suit was filed. Moreover, an insurer does not violate subsection (b)(5) when (1) the extent of liability is not reasonably clear and there is a bona fide dispute as to coverage based on the parties' good-faith reliance on their experts, (2) the insurer pays the insured the undisputed amount of the loss, and (3) a factfinder ultimately finds a substantially higher loss than that paid by the insurer. *See Southland Lloyds Ins. Co. v. Cantu,* 399 S.W.3d 558, 574 (Tex.App.–San Antonio 2011, pet. denied) (insurer initially paid homeowner $2,036.85 for hail damage based on determination of independent adjuster; homeowner brought suit and jury found hail damage was $30,000; no violation of subsection (b)(5)). In this case, no evidence shows Philadelphia Indemnity's reliance on the determinations of its experts was not in good faith, no evidence shows Philadelphia Indemnity's liability for more than the amount it initially paid the Church was reasonably clear until the appraisers issued their award, and Philadelphia Indemnity promptly paid the difference between the appraiser's award and its earlier payments. Therefore, no evidence shows Philadelphia Indemnity violated subsection (b)(5).

We conclude the Church presented no evidence Philadelphia Indemnity violated chapter 542.

Greenhaw's motion for summary judgment asserted he did not violate section 542.003 because that section regulates the actions of insurers only and not adjusters. We agree. Section 542.003(a) states, "An *insurer* engaging in business in this state may not engage in an unfair claim settlement practice." Section 542.003(b) states, "Any of the following acts by an *insurer* constitutes unfair claim settlement practices:...." TEX. INS. CODE ANN. § 542.003(a), (b) (emphasis added). We conclude Greenhaw established as a matter of law that he did not violate chapter 542.

We conclude the trial court did not err by granting appellees' motions for summary judgment on the Church's claims that appellees violated chapters 541 and 542 of the Insurance Code. We overrule the Church's fourth issue.

### Breach of the Duty of Good Faith and Fair Dealing

**[7]** In its fifth issue, the Church contends the trial court erred by granting Philadelphia Indemnity's motion for summary judgment on the Church's claim that Philadelphia Indemnity breached the duty of good faith and fair dealing. Philadelphia Indemnity's motion for summary judgment included the grounds that the Church had no evidence of a breach of the duty of good faith and fair dealing and no evidence that any breach caused the Church's damages.

**\*11** An insurer breaches the duty of good faith and fair dealing when "the insurer had no reasonable basis for denying or delaying payment of [a] claim, and [the insurer] knew or should have known that fact." *Universe Life Ins. Co. v. Giles,* 950 S.W.2d 48, 50–51 (Tex.1997) (quoting *Transp. Ins. Co. v. Moriel,* 879 S.W.2d 10, 18 (Tex.1994)). An insurer does not breach this duty merely by denying a claim erroneously. *U.S. Fire Ins. Co. v. Williams,* 955 S.W.2d 267, 268 (Tex.1997). If there is a bona fide dispute about the insurer's liability on the contract, the insurer's denial or delay does not rise to the level of bad faith as a matter of law. *Id.*

Philadelphia Indemnity had a reasonable basis for denying payments above $7,941.55: its experts told it that was the maximum extent of the damage to the Church's roofs caused by hail. There is no evidence in the record that Philadelphia Indemnity should have known its experts' estimations were inaccurate. The fact that Greenhaw's and Donan Engineering's estimates varied from the estimates of Bradley Engineering, Friedson, and Boutin established there was a bona fide dispute amongst these experts as to the extent of the loss covered by the policy; it is not evidence of bad faith.

The Church states "that Philadelphia breached the duty of good faith and fair dealing when it [1] refused to conduct a reasonable investigation of [the Church's] claims, [2] denied the full value of [the Church's] loss, [3] misrepresented aspects of coverage and conditions of the appraisal clause, [4] conspired ... with its adjuster to reduce and modify earlier determinations of loss[,] and [5] refused [the Church's] efforts to move forward with appraisal to settle the claim." As discussed above, none of these assertions constitutes evidence of a breach of the duty of good faith and fair dealing: (1) no evidence shows Philadelphia Indemnity did not conduct a reasonable investigation of the Church's claims; (2) Philadelphia Indemnity's initial denial of part of the Church's claim was due to Philadelphia Indemnity's good-faith reliance on its experts, which is not bad faith; (3) the record contains no evidence that any misstatement about the appraisal clause was communicated to the Church before Philadelphia Indemnity invoked the appraisal clause; (4) as discussed below, there was no actionable civil conspiracy, and (5) Philadelphia Indemnity never refused to move forward with appraisal because there was no demand for appraisal until Philadelphia Indemnity invoked the appraisal clause.

We conclude the trial court did not err by granting Philadelphia Indemnity's motion for summary judgment on the Church's claim for breach of the duty of good faith and fair dealing. We overrule the Church's fifth issue. Because of our resolution of the Church's fourth and fifth issues, we need not address its second issue.

## CIVIL CONSPIRACY

In its sixth issue, the Church contends the trial court erred by granting appellees' motions for summary judgment on the Church's claim for civil conspiracy. The elements of a civil conspiracy are (1) two or more persons, (2) an object to be accomplished, (3) a meeting of the minds on the object or course of action, (4) one or more unlawful overt acts, and (5) damages as a proximate result. *Tri v. J.T.T.,* 162 S.W.3d 552, 556 (Tex.2005). A civil conspiracy requires that the conspirators have the specific intent to agree to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means. *Juhl v. Airington,* 936 S.W.2d 640, 644 (Tex.1996). Civil conspiracy is a derivative tort. "That is, a defendant's liability for conspiracy depends on participation in some underlying tort for which the plaintiff seeks to hold at least one of the named defendants liable." *Tilton v. Marshall,* 925 S.W.2d 672, 681 (Tex.1996) (orig. proceeding). Philadelphia Indemnity asserted in its motion for summary judgment that the Church had no evidence to support any of these elements, and Greenhaw incorporated by reference Philadelphia Indemnity's grounds into his motion for summary judgment.

**\*12** The Church asserts Philadelphia Indemnity and Greenhaw (1) purposefully and intentionally collaborated to undervalue and underestimate the Church's claims of loss; (2) e-mail correspondence, activity diaries, Greenhaw's revision of his estimate, and their hiring Donan Engineering to contest the Church's claims are evidence of a meeting of the minds; (3) in doing so, Philadelphia Indemnity breached its contract with the Church, and Philadelphia Indemnity and Greenhaw violated duties under the Insurance Code and the common law; and (4) these actions proximately caused the Church to sustain an undue burden and monetary damages consisting of the fees paid to Friedson, Boutin, and the Church's lawyers and the additional damage the properties sustained from delay in repairing the buildings' roofs. As discussed previously in this opinion, the Church presented no evidence of a purposeful and intentional collaboration by Philadelphia Indemnity and Greenhaw to undervalue the Church's loss, and the Church presented no evidence of a breach of contract or violation of a statutory or common-law duty. Instead, the evidence showed only a bona fide dispute between the parties' experts as to the amount of the Church's loss and that Philadelphia Indemnity promptly

paid all amounts owing when the dispute was resolved, which was not a breach of contract, a violation of the Insurance Code, nor a breach of the duty of good faith and fair dealing.

We conclude the trial court did not err by granting appellees' motion for summary judgment on the Church's claim for civil conspiracy. We overrule the Church's sixth issue.

## CONCLUSION

We affirm the trial court's judgment.

**All Citations**

Not Reported in S.W.3d, 2016 WL 1242480

Footnotes

1    According to the Church's response to Philadelphia Indemnity's motion for summary judgment, Boutin's estimate of hail damage was substantially higher than Greenhaw's, Friedson's, and Donan Engineering's because it included interior water damage and called for replacement of air conditioning units. The Church later determined the interior water damage was caused by "an A/C leak, also covered by the policy. Under the circumstances, the Church chose not to pursue a claim for these damages."

2    The court distinguished appraisal from arbitration, stating: "while arbitration determines the rights and liabilities of the parties, appraisal merely 'binds the parties to have the extent or amount of the loss determined in a particular way.' " *Allstate,* 85 S.W.3d at 195 (quoting *Scottish Union & Nat'l Ins. Co. v. Clancy,* 8 S.W. 630, 631 (Tex.1888)).

3    The supreme court did not quote the appraisal clause in the opinion, and there is no opinion from the appeals court that denied the writ. Thus, we have no indication of the wording of the appraisal clause other than the supreme court's description.

4    Appellees argue that the fees the Church paid to Friedson, Boutin, and its lawyers are not recoverable as damages in its suit for breach of contract, violation of the Insurance Code, and breach of the duty of good faith and fair dealing. Because of our disposition of the Church's issues, we do not address this argument.

5    Ordinarily, a motion for summary judgment "must expressly present the grounds upon which it is made. A motion must stand or fall on the grounds expressly presented in the motion." *McConnell v. Southside Indep. Sch. Dist.,* 858 S.W.2d 337, 341 (Tex.1993); *see* TEX. R. CIV. P. 166a(c) ("The motion for summary judgment shall state the specific grounds therefor."). Some intermediate courts of appeal have permitted a defendant to adopt by reference the summary judgment grounds, argument, and evidence of another defendant when both defendants have a community of interest and identical defenses. *Chapman v. King Ranch, Inc.,* 41 S.W.3d 693, 699–700 (Tex.App.–Corpus Christi 2001), *rev'd on other grounds,* 118 S.W.3d 742 (Tex.2003); *see also Lockett v. HB Zachry Co.,* 285 S.W.3d 63, 72–73 (Tex.App.–Houston [1st Dist.], 2009, no pet.) (citing *Chapman* and permitting adoption by reference of codefendant's summary judgment grounds). This Court has not determined whether incorporation by reference of another movant's summary judgment grounds is permitted by rule 166a(c) and *McConnell. See Ketter v. ESC Med. Sys., Inc.,* 169 S.W.3d 791, 801–02 (Tex.App.–Dallas 2005, no pet.) (not necessary to determine whether movant could incorporate another movant's summary judgment grounds because the result would be the same). In this case, the Church has not complained at trial or on appeal about Greenhaw incorporating by reference Philadelphia Indemnity's summary judgment grounds, argument, and evidence. Any error from the trial court's consideration of the grounds Greenhaw incorporated by reference from Philadelphia Indemnity's motion for summary judgment is waived. *See* TEX. R. APP. P. 38.1(i) (parties' argument must contain argument for the contentions on appeal); *Mims–Brown v. Brown,* 428 S.W.3d 366, 377 n.6 (Tex.App.–Dallas 2014, no pet.) (issue not briefed on appeal is waived).